NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CLYDE C. GRADY, II,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2016-1362

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00746-EDK, Judge Elaine Kaplan.

---

Decided: July 7, 2016

---

CLYDE C. GRADY, II, Jacksonville, AR, pro se.

SARAH CHOI, Commercial Litigation Branch, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM.

---

Before NEWMAN, MOORE, and O'MALLEY, *Circuit Judges.*

PER CURIAM.

Clyde C. Grady, II appeals a decision from the Court of Federal Claims dismissing his claim against the United States Congress for lack of jurisdiction. We *affirm* the dismissal of Mr. Grady's complaint.

BACKGROUND

Between 2:30 and 3:00 p.m. on May 6, 2010, the Dow Jones Industrial Average ("Dow") dropped nearly a thousand points. Mr. Grady lost $106,935.62 in investments. The Securities and Exchange Commission ("SEC") estimates that collectively, individual investors lost more than $200 million. An investment tool known as a "stop loss order," which was designed to automatically sell stocks when they fell below certain prices, facilitated these losses. When the Dow suddenly dropped on May 6, 2010, a market failure coined the "Flash Crash," stop loss orders triggered the sale of stocks far below their true market value.

On July 16, 2015, Mr. Grady filed a complaint against the United States Congress for breach of contract.[1] His complaint alleged that by enacting the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* ("1934 Act") and subsequent legislation, Congress created a unilateral or implied-in-fact contract with investors like Mr. Grady. He alleged that his losses resulted from Congress' breach of its obligation under the 1934 Act to ensure the "maintenance of a fair and orderly" stock market for the "protection of investors." The Court of Federal Claims dismissed Mr. Grady's complaint for lack of jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), concluding that Mr. Grady had failed to allege the existence of a

---

[1]   Mr. Grady filed a highly similar action against the SEC in 2013. We, like the Court of Federal Claims, decline to address whether collateral estoppel bars Mr. Grady's instant claim.

contract between himself and Congress. Mr. Grady appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review the Court of Federal Claims' decision to dismiss a case for lack of subject matter jurisdiction de novo. *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013). Under the Tucker Act, the Court of Federal Claims may hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Mr. Grady relies on the creation of a unilateral or implied-in-fact contract to provide jurisdiction under the Tucker Act. He is correct that, on a motion to dismiss under the Court of Federal Claims Rule 12(b)(1), he does not need to prove the existence of a unilateral or implied-in-fact contract; he simply must allege one. But Mr. Grady's complaint fails to sufficiently allege the elements of a contract.

An implied-in-fact contract claim requires allegations of a specific "meeting of the minds" between an authorized representative of the United States and the claimant. *See Hercules, Inc. v. United States*, 516 U.S. 417, 424 (1996). Specifically, it requires (1) mutuality of intent to contract; (2) consideration; (3) an unambiguous offer and acceptance; and (4) actual authority of the government's representative to bind the government in contract. *Barrett Ref. Corp. v. United States*, 242 F.3d 1055, 1060 (Fed. Cir. 2001). We agree with the Court of Federal Claims that Mr. Grady's complaint fails to allege a "meeting of the minds" between himself and Congress and therefore fails to allege an implied-in-fact contract. Mr. Grady argues that Congress' conduct in enacting the 1934 Act and subsequent legislation, aimed at maintaining a fair

and orderly stock market for the protection of investors, evinced Congress' intent to contract with investors like Mr. Grady. Conduct of this sort is legally insufficient to demonstrate intent to contract. The 1934 Act's objective of maintaining a fair and orderly stock market simply expresses a goal of Congress; it does not show congressional intent to be contractually liable for fulfilling that goal. Instead, Mr. Grady's allegations more closely resemble a contract implied-in-law, being that Congress' conduct imputed a legal duty to maintain a fair and orderly stock market. *See Grady v. United States*, 124 Fed. Cl. 278, 281 (2015) (citing *Hercules*, 516 U.S. at 424). Even if that were the case, implied-in-law contracts fall outside the Tucker Act's grant of jurisdiction to the Court of Federal Claims. *Hercules*, 516 U.S. at 423.

We also agree with the Court of Federal Claims that Mr. Grady has failed to allege a unilateral contract. Mr. Grady argues that Congress created a unilateral contract by enacting the 1934 Act and subsequent legislation and assuming its obligation to maintain a fair and orderly stock market. Congress' enactment of securities laws is insufficient to form a unilateral contract. It is well established that the government's performance of its sovereign functions does not give rise to contractual obligations. *See, e.g.*, *D&N Bank v. United States*, 331 F.3d 1374, 1378–79 (Fed. Cir. 2003).

CONCLUSION

Because Mr. Grady has not alleged a unilateral or implied-in-fact contract, his claim is not authorized under the Tucker Act, and the Court of Federal Claims lacks jurisdiction. The decision of the Court of Federal Claims is *affirmed*.

**AFFIRMED**